## MATTER OF SIHASALE

### In Deportation Proceedings

### A-14682948

*Decided by Board August 5, 1966*

(1) Respondent, a native and citizen of Indonesia, has not established that because of anti-American sentiment in Indonesia and because of her employment there from 1957 to 1964 by a United States Government agency and by an American company that she would be subject to persecution within the meaning of section 243(h), Immigration and Nationality Act, as amended, if deported to Indonesia, as the political conditions in that country have been substantially corrected since her departure therefrom, she testified that she was never politically active in Indonesia, or elsewhere, she had no difficulty in obtaining documentation to depart therefrom for the United States, she was not persecuted in that country prior to her departure, and her family there has not been subjected to persecution.

(2) Evidence in the form of newspaper articles, which pertained to the issue at hand and which was offered by respondent, a section 243(h) applicant, in support of her claim of fear of persecution and was received into evidence by the special inquiry officer, should have been considered for what it was worth, despite the limitations on the evidentiary value thereof.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251]—Nonimmigrant—temporary visitor—remained longer.

This case originally came before us on appeal from a special inquiry officer's order of December 7, 1965, granting the respondent the privilege of voluntary departure, providing for her deportation from the United States to Indonesia on the charge contained in the order to show cause in the event of her failure to depart, and denying her application for temporary withholding of deportation to Indonesia. On March 23, 1966, we remanded the case to the special inquiry officer to give the respondent an opportunity to present any additional obtainable evidence in support of her application for temporary withholding of deportation to Indonesia, and for the further purpose of having the special inquiry officer evaluate all the evidence in a manner consistent with the concept of funda-

mental fairness. The special inquiry officer complied with our decision to the best of his ability.[1] He permitted his original decision to stand, and he then certified the case to this Board for final decision.

The record relates to a 37-year-old single female alien, a native and citizen of Indonesia, who last entered the United States on or about August 25, 1964. She was then admitted as a non-immigrant temporary visitor. She was thereafter authorized to remain in the United States in that status until June 25, 1965. She has remained here since that date without authority.

The foregoing establishes the respondent's deportability on the charge contained in the order to show cause. This was conceded in the course of the hearing before the special inquiry officer when the respondent was represented by counsel. The point is unchallenged here. This aspect of the case needs no further comment.

The special inquiry officer granted the respondent's alternative request for voluntary departure. The record before us supports his action in this respect. Further discussion of this phase of the matter is unnecessary.

On October 3, 1965, section 11(f) of Public Law 89-236 was enacted (79 Stat. 911), amending section 243(h) of the Immigration and Nationality Act (8 U.S.C. 1253). That amendment struck out the words "physical persecution" and inserted in lieu thereof, as a test for temporary withholding of an alien's deportation, "persecution on account of race, religion, or political opinion." Accordingly, and in view of the foregoing, the only issue remaining for our consideration is whether the respondent has met the burden of establishing that she would be subjected to persecution if returned to Indonesia (8 CFR 242.17(c)).

Between 1957 and 1964, the respondent worked for an agency of the United States Government and for an American company in Indonesia. She originally testified that she feared she would be persecuted by the communists if returned to Indonesia because of that employment. She claimed that on one occasion in 1961 or 1962 some people threw stones at a United States Government car in which she was riding. She stated that anti-American feeling has grown worse since her arrival in the United States.

At a continued hearing, the respondent asserted that she based her fear of persecution on the fact that there might still be communists in the government of Indonesia, notwithstanding the recent

---

[1] He stated in his opinion that while he realized our decision was a precedent one and binding on him, he was unable to apply it because he did not understand it.

purge in that country, and because other communists not in the government might harm her. She presented a number of letters indicating that it might be dangerous for her to return to Indonesia. She stated that these were in reply to letters she had sent there. At the reopened hearing accorded the respondent pursuant to our order of March 23, 1966, she had nothing further to offer on the point (p. 61).

Unexpected and dramatic political events have taken place in Indonesia since October 1, 1965. The Communist Party in that country has been eliminated as an organized political force. Relations with Communist China have been strained since that date. There is presently hope for an expectation of an improvement in United States-Indonesia relations.

The foregoing assessment of conditions presently obtaining in Indonesia is a political (factual) matter. This information is now a matter of widespread general and public knowledge. It does not support the reasons given by the respondent for fearing persecution in Indonesia generally.

The respondent has testified that her father, mother and brother are still in Indonesia. Her father is retired on a government pension. Her mother was once employed as a clerk in an office of the Dutch Government. Her brother is self-employed, working with his uncle in a business described as packing personal household goods, sometimes for Americans. No claim has been advanced or showing made that they have ever been persecuted. These factors obviously do not form a sound basis on which to predicate a claim of persecution. Also, the specific "stone throwing" incident mentioned by the respondent is too remote in point of time and too impersonally connected with her to be a persuasive factor here.

The respondent testified that she was never politically active in Indonesia, or elsewhere. She had no difficulty in obtaining documentation to depart from Indonesia for the United States. She had satisfactory employment in Indonesia before coming to the United States, and there is no reason to believe that equally satisfactory employment would not now be available to her there. These factors do not constitute justification for favorable exercise of the discretionary relief here requested.

We can sympathize with respondent's preference for life in the United States to that in Indonesia. This, however, is not a determining factor in cases such as this.

Summarizing briefly, none of the circumstances cited by the respondent appear persuasively pertinent to the point here at issue. The conditions of which she complains in Indonesia have been sub-

stantially corrected since her departure therefrom. No member of her family there has been subjected to persecution. She has not established that she was persecuted in that country prior to her departure for the United States. Accordingly, we concur in the special inquiry officer's conclusion that the respondent has not established that she will be subjected to persecution on account of her race, religion or political opinion. Therefore, his decision will be approved. Before entering an order to that effect, however, brief comment is required with respect to his conduct of the proceedings of this case.

As pointed out in our prior decision, the section of the law here involved, as is true of several other provisions of the Immigration and Nationality Act, vests in the Attorney General or his duly designated delegate the discretion to grant or deny relief from deportation. In all such cases, favorable exercise of relief is manifestly not a matter of right under any circumstances, but rather is a matter of grace. The very wording of the statute provides freedom of decision, to wit: the possibility of denial on purely discretionary grounds. In the last analysis, therefore, the decision in an individual case depends upon the facts peculiar to it.

Again referring to our prior decision herein, the respondent has the burden of establishing that her case is a satisfactory one for favorable action (8 CFR 242.17(c)). She has the obligation to set forth the conditions relating to her personally which support her anticipation of persecution. She has available to her no better methods for ascertaining current political conditions abroad than does the average person. Therefore, although the respondent may ultimately have the burden of persuasion, her own testimony may be the best—in fact the only—evidence available to her. It must, therefore, be accorded the most careful and objective evaluation possible, in the light of all available pertinent evidence, as hereinbefore discussed.

In connection with the foregoing, we are aware, as the special inquiry officer has indicated in his latest opinion, that an evaluation of the evidence in a case such as this is always subjective (personal) on the part of the evaluator. We are also aware that the special inquiry officer enjoyed the advantage of seeing and hearing this respondent. He was in the best position to determine the accuracy, reliability and truthfulness of her testimony. His evaluation thereof is entitled to great weight. However, our review of the record originally submitted for consideration clearly indicated an arbitrary disregard of the respondent's testimony by the special inquiry officer. He also disposed of it quite brusquely upon reconsideration.

Also, we note that the respondent offered some newspaper articles in support of her claim to fear of persecution in Indonesia; that the special inquiry officer received them into evidence; but that he stated in the course of the hearing that they were "notoriously unreliable" and that he intended "to give them absolutely no weight." We are cognizant of the obvious limitations on the evidentiary value of such items, for reasons which need no recitation here. However, it is well recognized that the strict legal rules of evidence do not apply in administrative proceedings such as this. The evidence here under consideration did pertain to the issue at hand; it was apparently the best obtainable by the respondent; it was made part of the record by the special inquiry officer; and we think it should have been considered by him for what it was worth.

Despite the foregoing procedural improprieties, we are convinced that the special inquiry officer's decision to deny the requested relief to this respondent must be approved. Those defects were not of such a nature as to deprive the respondent of the fundamental fairness required in this administrative proceeding. The record evidence was preserved for review purposes, and it does not support respondent's claim to fear of persecution if returned to Indonesia within the contemplation of the statute. The grant of the relief requested is not warranted in these premises.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed. The special inquiry officer's decision of December 7, 1965, is hereby approved.